The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **March 13, 2023**

**No. A-1-CA-38672**

**GEMINI LAS COLINAS, LLC,**

 Protestant-Appellant,

v.

**NEW MEXICO TAXATION & REVENUE DEPARTMENT,**

 Respondent-Appellee,

**IN THE MATTER OF THE PROTEST TO ASSESSMENT ISSUED UNDER LETTER ID NO. L0294038832.**

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE**
**Chris Romero, Hearing Officer**

Betzer, Roybal & Eisenberg, LLC
Benjamin C. Roybal
Albuquerque, NM

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Albuquerque, NM

for Appellant

Raúl Torrez, Attorney General
David E. Mittle, Special Assistant Attorney General
Santa Fe, NM

for Appellee

**OPINION**

**IVES, Judge.**

{1}     This appeal arises from an unsuccessful administrative tax protest brought by Gemini Las Colinas, LLC (Taxpayer) against the New Mexico Department of Taxation and Revenue (Department). Taxpayer challenges the denial of its protest, arguing that the administrative hearing officer (AHO) (1) applied the presumption of correctness and burden of proof in a manner contrary to law and (2) erred in evaluating Taxpayer's evidence.

{2}     To address these claims of error, we must clarify aspects of the procedure for tax protests under NMSA 1978, Section 7-1-24 (2017, amended 2019). To this end, we conclude that (1) whether a protesting taxpayer has overcome the statutory presumption of correctness is a purely legal determination, and (2) once this presumption is overcome, a burden of production shifts to the department to come forward with evidence to demonstrate that its assessment is correct, but the taxpayer bears the ultimate burden of persuading the hearing officer that the assessment is incorrect.

{3}     Applying these legal conclusions to the facts of Taxpayer's protest, we hold that the AHO erred by applying the statutory presumption of correctness in a manner contrary to law and that this error was not harmless. We therefore reverse the decision of the AHO and remand for further proceedings.

**FACTS AND PROCEDURAL BACKGROUND**

{4} The facts are undisputed. Taxpayer owns and operates an independent living facility in Albuquerque, renting apartments only to people who are at least fifty-five years old. Residents sign an agreement that includes a monthly rental fee for the apartments, as well as various services, such as housekeeping, community activities, cable television, transportation services, and safety checks.

{5} The Department audited Taxpayer for the period of January 1, 2011, through September 30, 2016. Eventually, the auditor concluded that Taxpayer had been overstating certain deductions for its gross receipts tax liability, and the Department issued a notice of assessment of taxes for $724,047.43 (gross receipts tax of $551,325.84, a penalty of $110,265.21, and interest of $62,456.38). Taxpayer paid the portions of this assessment that it did not dispute and timely filed a tax protest pursuant to Section 7-1-24 for the disputed portions.

{6} The dispute concerns the method for calculating Taxpayer's gross receipts tax. In essence, although Taxpayer charges its residents one monthly fee for both rent and services, only some of that comingled fee is subject to gross receipts tax. Specifically, while the income from the services performed by Taxpayer for its residents is subject to gross receipts tax, Taxpayer may take a deduction for income earned from the rental value of real property. *See* NMSA 1978, § 7-9-3.5(A)(1) (2007, amended 2019) (defining "gross receipts" to include "the total amount of

2

money or the value of other consideration received . . . from leasing or licensing property employed in New Mexico . . . or from performing services in New Mexico"); NMSA 1978, § 7-9-53(A) (1998) ("Receipts from the . . . lease of real property . . . may be deducted from gross receipts."). As such, the crux of Taxpayer's protest is that the Department incorrectly determined the rental value and, consequently, assessed taxes in an amount greater than Taxpayer's actual liability.

{7}     During the audit, in an effort to accurately determine the amount of the deduction and Taxpayer's liability in light of this deduction, the auditor requested various categories of documentation from Taxpayer. Taxpayer only provided some of the requested documentation. As a result, the auditor experienced difficulties reconciling the various sources of information pertinent to Taxpayer's liability and concluded that Taxpayer's documentation provided an insufficient foundation on which to calculate the rental deduction.

{8}     In the end, to determine the rental income and gross receipts tax liability, the auditor "significantly relied" on one type of document provided by Taxpayer: Internal Revenue Service Form 8825, a federal tax form filed by Taxpayer's parent company for each of the tax years in question. Although the record provides few substantive details about this document, the auditor's reports state that Form 8825 is titled "Rental Real Estate Income and Expenses of a Partnership or an S

3

Corporation," and that each Form 8825 contains a figure reported as "gross rents" from Taxpayer's Albuquerque location.

{9} During the protest hearing before the AHO, Taxpayer sought to prove, through testimony, that Form 8825 did not accurately reflect rental income for purposes of determining Taxpayer's gross receipts tax liability. Taxpayer's witnesses also testified to two alternative methodologies for separating its receipts from rents and services: a cost-accounting method and a third-party market analysis. After Taxpayer rested its case, the Department presented the testimony of its auditor to defend its reliance on Form 8825 and its assessment more broadly.

{10} The AHO denied Taxpayer's protest and explained the reasons for the denial in a decision and order, which included a statement at the heart of this appeal:

> [A]lthough there may be competing methods for calculating the amount of a rental deduction under the facts of the protest, *Taxpayer did not prove by a preponderance of evidence* that the method actually employed by the Department resulted in an incorrect assessment, or that the alternative methods proposed at the hearing were more reliable or trustworthy under the facts of this protest. *Therefore, Taxpayer did not overcome the presumption of correctness* that attached to the assessment and Taxpayer's protest should be denied.

(Emphases added.) Taxpayer appealed pursuant to NMSA 1978, Section 7-1-25 (2015).

**DISCUSSION**

{11} In reviewing the AHO's decision, "we apply a whole-record standard of review." *Town & Country Food Stores, Inc. v. N.M. Regul. & Licensing Dep't*, 2012-

4

NMCA-046, ¶ 8, 277 P.3d 490 (internal quotation marks and citation omitted). We will only set aside the decision if it is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." *Team Specialty Prods., Inc. v. N.M. Tax'n & Revenue Dep't*, 2005-NMCA-020, ¶ 8, 137 N.M. 50, 107 P.3d 4 (internal quotation marks and citation omitted); *accord* § 7-1-25(C). We review the interpretation of administrative regulations de novo. *State v. Hobbs*, 2016-NMCA-022, ¶ 9, 366 P.3d 304.

{12}    Taxpayer's primary claim of error is that the AHO misunderstood what the law required Taxpayer to do to overcome the statutory presumption that an assessment is correct. *See* NMSA 1978, § 7-1-17(C) (2007). Specifically, Taxpayer argues that the AHO mistakenly believed that in order to rebut that presumption, Taxpayer was required to prove by a preponderance of the evidence that the Department's assessment was incorrect. According to Taxpayer, pursuant to a regulation promulgated by the Department, the presumption of correctness can be overcome by a more modest evidentiary showing. *See* 3.1.6.12(A) NMAC. Taxpayer contends that as a result of this legal error, the AHO's subsequent "findings are invalid because the [AHO] conducted his analysis with the presumption still in force and the burden of proof improperly placed on [Taxpayer] rather than on the Department." Relatedly, Taxpayer argues that once it overcame the presumption of

correctness, the burden of persuasion should have shifted to the Department. Taxpayer's second claim of error is that the AHO acted arbitrarily and capriciously and abused the AHO's discretion in imposing "unreasonable evidentiary burdens" on Taxpayer. We address each claim of error in turn.

**I.      The AHO Erred in Applying the Presumption of Correctness**

{13}      Our discussion of Taxpayer's first claim of error proceeds in three parts. First, we discuss the established procedural framework for tax protest proceedings. Second, we clarify that framework by answering legal questions of first impression in New Mexico: (1) what a protesting taxpayer must do to overcome the presumption of correctness, and whether evidentiary weighing is appropriate at this stage; and (2) if a taxpayer overcomes the presumption, precisely what kind or kinds of burden shift to the Department and which party ultimately bears the burden of persuasion. Third and finally, applying our legal conclusions to the facts of this case, we hold that the AHO erred and that the error was not harmless, and we therefore reverse and remand for further proceedings.

**A.      The Established Procedural Framework for Tax Protest Proceedings**

{14}      Many tax protest proceedings, including this one, begin when the department issues a notice of assessment of taxes to a taxpayer. Section 7-1-17(B)(2). By statute, this notice states the nature and amount of the assessed tax, demands payment of that amount, and describes the taxpayer's available remedies. *Id.* One such remedy is a

protest, Section 7-1-24(E), which may be resolved through an informal conference or through an administrative hearing with the Department. NMSA 1978, § 7-1B-8(B) (2015, amended 2019).

{15}     Under the Tax Administration Act, the tax assessment in the notice "is presumed to be correct." Section 7-1-17(C); *accord* 3.1.6.12(A) NMAC. Under a department regulation, and consistent with our precedent, "[t]he effect of the presumption of correctness is that the taxpayer has the burden of [overcoming the presumption]." 3.1.6.12(A) NMAC; *accord Archuleta v. O'Cheskey*, 1972-NMCA-165, ¶ 11, 84 N.M. 428, 504 P.2d 638.

{16}     As occurred in the case before us, a taxpayer can attempt to overcome this initial burden factually, by "coming forward with some countervailing evidence tending to dispute the factual correctness of the assessment made by the secretary."[1] 3.1.6.12(A) NMAC. "Unsubstantiated statements that the assessment is incorrect cannot overcome the presumption of correctness." *Id.* If a taxpayer overcomes the presumption, "the burden shifts to the [d]epartment to demonstrate the correctness of the tax assessment." *N.M. Tax'n & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 8, 336 P.3d 436. The precise nature of this burden is unclear.

---

[1]A protesting taxpayer can also attempt to overcome the presumption legally, by "showing that the [department] failed to follow the statutory provisions contained in the Tax Administration Act," *McConnell v. State ex rel. Bureau of Revenue*, 1971-NMCA-181, ¶ 7, 83 N.M. 386, 492 P.2d 1003, but Taxpayer did not pursue a legal challenge here.

{17}     What is clear is that, at some point in the process, the hearing officer acts as a trier of fact and must ultimately "weigh the testimony, determine the credibility of the witnesses, reconcile inconsistencies, and determine where the truth lies." *Id.* ¶ 23 (internal quotation marks and citation omitted). The burden of proof during an administrative hearing on a tax protest is preponderance of evidence. 22.600.1.18(A) NMAC.[2] Finally, by statute, after the protest hearing concludes, the hearing officer must issue a written decision and order which explains, among other things, the decision of the hearing officer with findings of fact and law, as well as underlying reasoning. Section 7-1B-8(I).

**B.     Unresolved Legal Issues**

{18}     Taxpayer's appeal presents two legal issues related to this procedural framework: (1) what must a taxpayer do to overcome the presumption of correctness and whether, at this juncture, the hearing officer acts in their fact-finding capacity; and (2) if a taxpayer overcomes the presumption, what type of burden shifts to the department, and—relatedly—which party bears the ultimate burden of persuasion.

{19}     Answering these questions is no easy task. A leading treatise on evidence notes that the term "presumption" is "the slipperiest member of the family of legal

---

[2]The cited regulation provides that "[u]nless otherwise specified by statute, the burden of proof in an administrative proceeding before the administrative hearings office is the preponderance of evidence." *Id.* Because the applicable tax protest statutes do not specify otherwise, we conclude that this regulation articulates the appropriate burden of proof.

terms, except its first cousin, 'burden of proof.'" 2 Robert P. Mosteller et al., *McCormick on Evidence* § 342 (8th ed. 2022). Indeed, "burden of proof" is often used imprecisely "to describe two distinct concepts": "the burden of persuasion, i.e., the burden to persuade the fact[-]finder" and "the burden of production, i.e., the burden to produce evidence." *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 24, 304 P.3d 409. Mindful of these challenges, we address the questions before us.

**1.    The Operation of the Presumption of Correctness**

{20}    We begin our analysis with 3.1.6.12(A) NMAC, a department-promulgated regulation that provides the following guidance about what suffices, and what does not suffice, to overcome the statutory presumption of correctness:

> The effect of the presumption of correctness is that the taxpayer has the burden of coming forward with some countervailing evidence tending to dispute the factual correctness of the assessment made by the secretary. Unsubstantiated statements that the assessment is incorrect cannot overcome the presumption of correctness.

We approach the interpretation of regulations just as we approach the interpretation of statutes. *Hobbs*, 2016-NMCA-022, ¶ 9. In so doing, we give effect to clear and unambiguous language and give words their ordinary meanings. *Albuquerque Bernalillo Cnty. Water Util. Auth. v. N.M. Pub. Regul. Comm'n*, 2010-NMSC-013, ¶ 52, 148 N.M. 21, 229 P.3d 494.

**{21}** The plain language of the first sentence of the regulation tells us that—at the presumption stage—the taxpayer need not *prove*, by a preponderance of evidence or otherwise, that the tax assessment performed by the department is incorrect. Instead, to rebut the presumption, the taxpayer need only "come[] forward with some countervailing evidence" that "tend[s] to dispute" the assessment. 3.1.6.12(A) NMAC. We understand this language to imply a burden to produce evidence, rather than a burden to persuade a fact-finder. Indeed, nothing in the language indicates that the taxpayer must *prove* anything at all. Instead, it requires the taxpayer to *produce* evidence that presents a factual dispute about the accuracy of the assessment. And, importantly, the regulatory language only places a burden on the taxpayer; at this juncture, nothing is required of the department. *Id.* ("[*T*]*he taxpayer has the burden of coming forward with some countervailing evidence.*" (emphasis added)). After the taxpayer has presented its evidence, the hearing officer is positioned to determine whether the presumption has been overcome. *Cf.* 22.600.3.24(B) NMAC ("Because the taxpayer must overcome the presumption of correctness or otherwise establish entitlement to the claim or relief sought during the protest, the taxpayer will ordinarily present their case first, followed by [the department], except as otherwise provided by law or as otherwise ordered by the hearing officer for good cause."). In short, 3.1.6.12(A) NMAC does not call for the hearing officer to consider the department's evidence in making this determination.

10

{22} The plain language of the second sentence of the regulation also supports our interpretation. It provides that "[u]nsubstantiated statements that the assessment is incorrect" do not suffice to overcome the presumption. 3.1.6.12(A) NMAC. As Taxpayer points out, a proposition is "substantiated" if it "establish[es] the existence or truth of by proof or competent evidence." *Substantiate*, *Webster's Third New Int'l Dictionary* (Unabridged ed. 2002); *cf. State v. Boyse*, 2013-NMSC-024, ¶ 9, 303 P.3d 830 (recognizing that application of the plain language rule often entails reliance on dictionary definitions). Accordingly, a proposition that is unsupported by proof or evidence is unsubstantiated. *See McConnell*, 1971-NMCA-181, ¶ 7 (stating that the "presumption was not overcome because the record shows . . . [that the taxpayer] presented *no* evidence tending to dispute the factual correctness of the assessments" (emphasis added)). Importantly, like the first sentence of the regulation, the second sentence does not require the taxpayer to present *persuasive* evidence or to *prove* anything at all. It requires only that the taxpayer present some evidentiary support, as opposed to a statement unsupported by evidence, for its contention that the assessment is incorrect.

{23} Considering the plain language of the two sentences of the regulation together, we conclude that determining whether the taxpayer has overcome the presumption of correctness is the first step in resolving a tax protest, and that it will only be the last step if the taxpayer fails to overcome the presumption. That is, if the taxpayer

11

has not overcome the presumption, the protest may simply be denied. In this scenario, there is no need for the department to present any evidence. On the other hand, if the taxpayer has overcome the presumption, the outcome of the protest, at that point, remains undetermined. The taxpayer has overcome its initial hurdle, but further legal and factual assessments remain before the hearing officer can determine whether to grant or deny the protest.

{24}    Our precedent buttresses this conclusion. As discussed, our tax protest cases indicate that once the presumption of correctness is overcome, the "burden shifts to the [d]epartment to demonstrate the correctness of the tax assessment." *Casias Trucking*, 2014-NMCA-099, ¶ 8; *accord MPC Ltd. v. N.M. Tax'n & Revenue Dep't*, 2003-NMCA-021, ¶ 13, 133 N.M. 217, 62 P.3d 308. As a consequence, under this burden-shifting framework, logic dictates that the initial presumption of correctness inquiry is not necessarily dispositive. If the taxpayer rebuts the presumption, the department must be given an opportunity to present evidence to support its assessment, and the hearing officer may not grant or deny the protest without, at the very least, determining whether the department has carried its burden. The precise nature of this burden is a subject we address in the next section of this opinion.

{25}    Before turning to that topic, we make an observation that follows naturally from the preceding discussion: the presumption of correctness assessment is made by the hearing officer in a purely legal capacity. The regulation's call for "some

countervailing evidence" that "tend[s]" to dispute the assessment, 3.1.6.12(A) NMAC, is merely a threshold requirement for evidence, and that evidence need not be credible or ultimately persuasive. As such, in determining whether the presumption has been overcome, the hearing officer's determination does not involve fact-finding tasks such as making credibility determinations and weighing evidence. These fact-finding tasks occur, if at all, after both sides have put forth evidence. As we have explained, 3.1.6.12(A) NMAC does not require the taxpayer to *prove* anything but only to *produce*. As a natural consequence, the presumption of correctness assessment is a legal determination. If a protesting taxpayer overcomes the presumption, the "burden shifts to the [d]epartment to demonstrate the correctness of the tax assessment." *Casias Trucking*, 2014-NMCA-099, ¶ 8.

**2.      Burden-Shifting and Burdens of Proof**

{26}    We now discuss what the department must do to carry its burden of demonstrating or showing that its assessment is correct. *See id.*; *see also MPC Ltd.*, 2003-NMCA-021, ¶ 13 ("A taxpayer may rebut the presumption, shifting the burden to the [d]epartment to show the correctness of the tax assessment."). Conceivably, the burden mentioned in our cases could refer to the burden of persuasion, the burden of production, or both, *Strausberg*, 2013-NMSC-032, ¶ 24, and this appeal forces us to determine the nature of this burden. Must the department simply put forth evidence to justify its assessment (a burden of production), or must the department

13

ultimately prove the correctness of its assessment to the hearing officer by a preponderance of evidence (burden of persuasion)? As Taxpayer acknowledges—and we agree—our case law regarding this question is "inconclusive." For the following reasons, we conclude that the burden that shifts to the department is a burden of production, and that the burden of persuasion is ultimately borne by the taxpayer.

{27}     To arrive at these conclusions, we first discuss which party has these burdens initially. The regulations concerning tax protest hearings state that "[t]he taxpayer shall have the burden of proof, except as otherwise provided by law." 22.600.3.24(B) NMAC. We interpret this regulation to refer to both the burden of persuasion and the burden of production, which accords with the general principle that "the party who has the burden of pleading a fact will have the burdens of producing evidence and of persuading the [fact-finder] of its existence as well." 2 *McCormick on Evidence*, *supra*, § 337. Indeed, it is the taxpayer who seeks to challenge the department's tax assessment and the taxpayer who must initiate the litigation by filing the protest. *See* § 7-1-24(B); *Wallace v. Wanek*, 1970-NMCA-049, ¶ 9, 81 N.M. 478, 468 P.2d 879 (stating that the party "who alleges the affirmative must prove"). We therefore conclude that—at the outset of the tax protest—a protesting taxpayer bears both the burden to produce evidence (in order to overcome the presumption of correctness) and the burden to ultimately prove its case by a

preponderance of evidence. *See* 22.600.1.18(A) NMAC. And, importantly, while the burden of production often shifts (or even disappears) during civil litigation, the burden of persuasion generally remains on the party who bears it initially. *See* 2 *McCormick on Evidence*, *supra*, § 336 (noting that the burden of production "may shift to the adversary when the pleader has discharged its initial duty," but that the burden of persuasion "does not shift from party to party during the course of the trial simply because it need not be allocated until it is time for a decision"); 29 Am. Jur. 2d *Evidence* § 168, Westlaw (database updated Mar. 2023) ("The burden of persuasion never leaves the party on whom it is originally cast.").

{28}     These considerations in mind, we believe that the statements about burden shifting in *Casias Trucking* and *MPC Ltd.* refer to the burden of production, and that the burden of persuasion remains with the taxpayer throughout the proceedings. We know that the taxpayer bears both burdens at the outset, and that the burden of persuasion generally does not leave the party who bears it initially. We believe these propositions lead to an obvious conclusion, and we do not believe that any authority compels us to reject it. Indeed, Taxpayer has not cited, and we have not found, any statute or regulation stating, or even suggesting, that New Mexico law deviates from general burden of persuasion principles in the context of tax protest proceedings. Moreover, our precedents recognizing that the department bears some burden, *Casias Trucking* and *MPC Ltd.*, do not include any holdings or set forth any legal

15

conclusions about the precise nature of the department's burden. That issue was not before this Court in those cases, and we decline to infer from the scant and ambiguous statements therein that this Court intended to deviate from the general rule that burdens of persuasion do not shift.[3] *Cf. Sangre de Cristo Dev. Corp. v. City of Santa Fe*, 1972-NMSC-076, ¶ 23, 84 N.M. 343, 503 P.2d 323 ("The general rule is that cases are not authority for propositions not considered."). In short, we are unwilling—in the absence of explicit authority addressing the specific question before us—to interpret these ambiguous statements in a manner that would cut sharply against the grain of general legal principles regarding the burden of persuasion.[4]

---

[3]We recognize that *Casias Trucking* includes the statement that "the burden shifts back to the [d]epartment to *prove* the correctness of its assessment." 2014-NMCA-099, ¶ 26 (emphasis added). Although this statement could be read to imply that the department bears the burden of persuasion, *Casias Trucking* cites *MPC Ltd.* for this proposition, and the description of the burden in that case—"to show"—more clearly implies a burden of production. *See MPC Ltd.*, 2003-NMCA-021, ¶ 13.

[4] Taxpayer contends that our case law regarding property tax valuation protests—an adjacent area of state tax law—more explicitly states that the burden of persuasion shifts once the presumption of correctness is overcome. *See, e.g., First Nat'l Bank v. Bernalillo Cnty. Valuation Protest Bd.*, 1977-NMCA-005, 90 N.M. 110, 560 P.2d 174; *Addis v. Santa Fe Cnty. Valuation Protests Bd.*, 1977-NMCA-122, 91 N.M. 165, 571 P.2d 822; *2727 San Pedro LLC v. Bernalillo Cnty. Assessor*, 2017-NMCA-008, 389 P.3d 287. Taxpayer argues that, in reading these cases, "[i]t is difficult to interpret th[is] Court's analysis as doing anything but shifting the burden of persuasion to the taxing authority once the presumption of correctness has been rebutted." After examining these cases closely, we cannot agree that they conclusively demonstrate this notion. Like the tax assessment cases pertinent to this appeal, the property valuation cases cited by Taxpayer are ultimately inconclusive regarding the true nature of the burden shift. Although we agree that the cases may

16

{29} We therefore conclude that if a taxpayer rebuts the presumption of correctness, the burden that shifts to the department is a burden of production. To overcome this burden, the department must put forth evidence to show the correctness of its assessment—that is, evidence sufficient to make the correctness of the department's assessment a question of fact. The imposition of this burden is sensible and pragmatic; it ensures that when the hearing officer decides the case on its merits and acts as a fact-finder, the hearing officer can consider the evidence presented by both parties. Likewise, the existence of this burden means that the department cannot simply rely on the unreliability or incredibility of the taxpayer's evidence. Instead, the department must produce evidence to justify its assessment. If the department's evidence creates a question of fact about the correctness of the assessment, it has fulfilled its burden of production, and the case is ripe for the

be read in a manner that implies a shifting of a burden of persuasion, we likewise believe they may be coherently read to imply a shifting of the burden of production—they are, as such, ambiguous. *See, e.g.*, *2727 San Pedro LLC*, 2017-NMCA-008, ¶ 25 (holding that "a reasonable person" could not conclude that the tax authority bore its burden to show that the assessor's assessment used a "generally accepted appraisal technique[]" after the presumption of correctness had been overcome, and thus this Court concluded that the hearing officer erred in ruling that the tax authority overcame its post-presumption of correctness burden); *First Nat'l Bank*, 1977-NMCA-005, ¶ 25 ("When a taxpayer overcomes the presumption of the correctness of the assessor's method of valuation, the burden shifts to the assessor to prove that his method of valuation utilized a 'generally accepted appraisal technique.' The board shall then determine the merits of the protest."). Because these cases are not directly pertinent to this appeal, we need not interpret them definitively. We simply note that, on our reading, these cases do not have the persuasive power required to sustain Taxpayer's argument.

hearing officer to resolve factual disputes and decide the protest on the merits. Ultimately, at the merits stage, the burden of persuasion remains on the taxpayer—the party who bore it at the outset. As a result, if the evidence is in equipoise, the hearing officer should deny the taxpayer's protest. *Cf.* UJI 13-304 NMRA (noting that "[e]venly balanced evidence is not sufficient" to carry the burden of persuasion).

{30} To conclude our analysis, we note that the legal conclusions discussed in this opinion—regarding the presumption of correctness and burden-shifting framework—do not substantively alter the ordinary procedural sequence of tax protest proceedings. Consistent with agency regulations, we believe it will ordinarily be the taxpayer who presents its case in chief first. *See* 22.600.3.24(B) NMAC. At this point, the taxpayer will attempt to overcome the presumption of correctness, as well as to persuade the hearing officer-as-fact-finder of the protest's merit. Then, if the presumption is overcome, a burden to produce evidence shifts to the department. If the department meets this burden (by way of its own case in chief), the hearing officer has heard the evidence of both sides and must then perform fact-finding duties to grant or deny the protest. As such, although we have clarified the types of legal determinations that the hearing officer makes along the way, we do not modify the basic underlying procedure of the protest hearings. Moreover, we recognize that hearing officers—like many adjudicative decision-makers—have a general

18

discretionary authority to "regulate the course of hearings," and may adapt basic procedure to fit the needs of a particular dispute. 22.600.3.23(B)(6) NMAC.

We now turn to Taxpayer's claim of error, applying our legal conclusions to the AHO's decision in this case

## C.     The AHO Erred, and the Error Is Not Harmless

{31}     Taxpayer's argument is straightforward: the AHO erred in applying an "improperly high standard on [Taxpayer]" to rebut the presumption of correctness. Specifically, Taxpayer argues that the AHO erred by concluding that Taxpayer had not rebutted the presumption of correctness because it did not prove by "a preponderance of evidence" that the assessment was incorrect. As a result, Taxpayer claims that "[t]he [AHO]'s evaluation of the evidence and his resulting findings are invalid because the [AHO] conducted his analysis with the presumption still in force and the burden of proof improperly placed on [Taxpayer] rather than on the Department."

{32}     We agree with Taxpayer that the decision and order indicates that the AHO sought a preponderance of evidence to overcome the statutory presumption of correctness, and we agree that this evidentiary standard was "not in accordance with the law." Section 7-1-25(C)(3). Indeed, the causal language in the decision and order supports our understanding of the AHO's reasoning: "the [AHO] determined that . . . Taxpayer did not prove by a preponderance of evidence that the method actually

19

employed by the Department resulted in an incorrect assessment, or that the alternative methods proposed at the hearing were more reliable or trustworthy under the facts of this protest. *Therefore*, Taxpayer did not overcome the presumption of correctness that attached to the assessment and Taxpayer's protest should be denied." (Emphasis added.) This reasoning cannot be reconciled with our conclusion that a protesting taxpayer overcomes the presumption of correctness by presenting "some countervailing evidence tending to dispute the factual correctness of the assessment." 3.1.6.12(A) NMAC. Moreover, to the extent that the AHO performed various forms of fact-finding to determine whether the presumption of correctness had been overcome, the AHO erred. As we have stated, the presumption of correctness determination is made by the hearing officer acting in a purely legal capacity. For these reasons, the AHO misapplied the relevant law as it relates to overcoming the presumption of correctness, and in so doing, erred.

{33} We now must consider whether this error is harmless or whether it warrants reversal. *See Hi-Country Buick GMC, Inc. v. N.M. Tax'n & Revenue Dep't*, 2016-NMCA-027, ¶ 11, 367 P.3d 862 (conducting harmless error analysis in review of a tax protest proceeding). Although the burden is on the appellant to show that its alleged error was prejudicial, *see Christopherson v. St. Vincent Hosp.*, 2016-NMCA-097, ¶ 37, 384 P.3d 1098, reversal is required where the appellant "provides the slightest evidence of prejudice," and this Court will "resolve all doubt in favor of the

20

complaining party." *Kennedy v. Dexter Consol. Schs.*, 2000-NMSC-025, ¶ 26, 129 N.M. 436, 10 P.3d 115.

{34} On appeal, the Department argues that any procedural error, in the event one occurred, "does not rise to the level of prejudice or necessitate reversal." To support this view, the Department argues that both sides presented their cases at the hearing and cross-examined each other's witnesses, and that the AHO subsequently weighed all the evidence from both sides. At the end of this process, the AHO came to a conclusion that fully resolved the merits of the protest:

> The method selected and utilized by the Department in this protest, which relied on . . . Form[] 8825, was wholly reasonable given the apparent lack of records available for employing other reasonable methods, including the alternatives proposed by Taxpayer at the hearing. The [AHO] is unable to conclude based on the evidence presented that the Department's determination of Taxpayer's liability was incorrect.

On the basis of these facts, we understand the Department to argue that the AHO's error was not prejudicial because, ultimately, the AHO conducted a full merits assessment and concluded that Taxpayer had been unable to show by a preponderance of evidence that the Department's assessment was incorrect.

{35} Taxpayer, on the other hand, argues that because the decision and order "commingles and muddles consideration of the presumption and determination of the merits, . . . it is impossible to say where one begins and the other ends." In Taxpayer's view, it is impossible for this Court to determine to what extent, if any,

21

the erroneous treatment of the presumption of correctness affected the later determination of the case on its merits. In essence, Taxpayer argues that it presented sufficient evidence to overcome the presumption of correctness, and thus it was entitled to a merits determination "[f]ree of the [p]resumption of [c]orrectness" in which "the Department bears the burden of proving the correctness of its assessment in light of all the evidence." The error, on this view, was not harmless.

{36}     Although we agree with only some of Taxpayer's contentions, we conclude that the error was not harmless. To explain why, we consider Taxpayer's prejudice argument sequentially: (1) whether its evidence should have overcome the presumption of correctness; (2) whether the presumption should therefore have played no role in the AHO's analysis; and (3) whether the Department should have been ultimately responsible for proving its case by a preponderance of evidence.

{37}     First, we agree that Taxpayer's evidence overcame the presumption of correctness. At the outset of the proceeding, Taxpayer sought to rebut the presumption factually, by "coming forward with some countervailing evidence tending to dispute the factual correctness of the assessment." 3.1.6.12(A) NMAC. To this end, Taxpayer introduced evidence in the form of sworn testimony that the tax form relied upon by the Department to assess Taxpayer's tax liability—Form 8825—did not accurately represent Taxpayer's rental revenue for the purpose of determining gross receipts tax liability. This testimony went beyond mere

22

conclusory statements: it provided a specific rationale for why the relevant rental revenue was not accurately represented on the tax forms. In essence, Taxpayer's testimonial evidence sought to show that, because the tax form in question was filed by Taxpayer's "parent company," and because that parent company is principally owned by a "real estate investment trust," the income reported on Form 8825 was subject to "certain adjustments" and ultimately reflected a "stripped down version of the rent" that was inaccurate for gross receipts tax purposes. Even if this evidence may be susceptible to criticism, we believe that it nevertheless went beyond mere "unsubstantiated statements," and clearly "tend[ed] to dispute the factual correctness of the assessment." 3.1.6.12(A) NMAC. It was relevant to the Department's assessment method and included a factual basis for concluding that the form underrepresented Taxpayer's rental income. Whether or not this explanatory account was convincing or persuasive (i.e., what evidentiary weight it should be given), or whether the testifying witness was credible, are considerations to be assessed at the merits stage by the AHO as fact-finder. Taxpayer's evidence was therefore sufficient to rebut the presumption of correctness and shift the burden of production to the Department to demonstrate a triable issue of fact as to the correctness of the assessment.

{38} Second, we agree with Taxpayer and the Department that the presumption of correctness should have played no subsequent role in the determination of the merits

23

of the protest. We accept the Department's concession that "[o]nce the presumption is rebutted, it disappears from the case." This concession is consistent with the plain language of 3.1.6.12(A) NMAC, which states that "[*t*]*he effect*" of the presumption of correctness is that the taxpayer bears the burden of disputing the correctness of the assessment. (Emphasis added.) In other words, the *only* effect of the presumption is the placement of an initial burden of production on the taxpayer. The presumption plays no additional role. But the AHO appears to have conducted the ultimate merits analysis under the mistaken belief that the presumption had not been overcome, and we therefore cannot say that the AHO's conclusions on the merits would have resulted in the denial of Taxpayer's protest in the absence of the presumption. Because the decision and order indicates that the presumption could have impacted the outcome of the protest, we conclude that the record reflects, at the very least, "the slightest evidence of prejudice," *Kennedy*, 2000-NMSC-025, ¶ 26, and was therefore not harmless.

{39}     Third, we disagree with Taxpayer's argument that, after it rebutted the presumption, the Department bore the burden of persuasion. As we have explained, the taxpayer bears the burden of persuasion throughout; it never shifts to the department.

{40}     For the reasons outlined here, we reverse and remand the case to the AHO for further proceedings consistent with this opinion. We leave to the discretion of the

24

AHO what proceedings are necessary—whether a further hearing or briefing are required or whether the determination can be made on the record as it exists. We now turn to a discussion of Taxpayer's claims of evidentiary error.

## II. The AHO Imposed an Erroneous Evidentiary Requirement on Taxpayer

{41}   On appeal, Taxpayer makes two claims of error related to the AHO's treatment of its evidence. First, it argues that the AHO erroneously faulted Taxpayer for not presenting its alternative methods of determining the rental receipts deduction until the protest hearing itself (i.e., well after it was audited and assessed). Taxpayer contends that its evidence of alternative methods should not have been "disparage[d]" on this basis, because according to Taxpayer, it presented its evidence of alternative methods "at the exact point it was expected to do so: during the protest hearing."

{42}   Second, it argues that it was "blindsided" by the AHO's dissatisfaction—as reflected in the decision and order—regarding a perceived lack of supporting documentation to support its alternative methods. Taxpayer contends that "[h]ad the hearing officer raised such a concern [at the hearing], [Taxpayer] could have introduced the underlying general ledger records into evidence at that time or asked that the evidentiary record be held open to allow it to do so after the hearing concluded."

25

{43}     As to the first argument, assuming without deciding that Taxpayer's alternative methods of assessing tax liability are relevant to whether the Department's assessment was correct, we conclude that the AHO erred in discounting or "disparag[ing]" this evidence during the presumption of correctness determination. As we have explained, when determining whether a taxpayer has rebutted the presumption of correctness, a hearing officer does not weigh the evidence or perform other fact-finding duties. Consequently, we believe the AHO erred by negatively weighing Taxpayer's evidence at this threshold stage of the analysis.

{44}     However, we are unpersuaded by Taxpayer's second argument. Taxpayer has cited no authority for the dubious proposition that an administrative adjudicator— whether acting in the capacity of evidentiary gatekeeper or finder-of-fact—has a duty to make the parties aware of evidence it believes the parties should present. Accordingly, we hold that the AHO did not abuse his discretion or act arbitrarily or capriciously by not alerting Taxpayer of its perceived evidentiary shortcomings.

**CONCLUSION**

{45}     We reverse and remand for further proceedings consistent with this opinion.

{46}     **IT IS SO ORDERED.**

_____

**ZACHARY A. IVES, Judge**

26

**WE CONCUR:**

_____
**MEGAN P. DUFFY, Judge**

_____
**GERALD E. BACA, Judge**